```
 1                  UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF FLORIDA
 2                    JACKSONVILLE DIVISION

 3   UNITED STATES OF AMERICA,      Jacksonville, Florida

 4              Plaintiff,     Case No. 3:12-cr-198-J-25MCR

 5   -vs-                           Tuesday, June 25, 2013

 6   LORRAINE BROWN,                10:29 a.m.

 7              Defendant.     Courtroom 10A

 8   _____

 9
                         TRANSCRIPT OF SENTENCING
10           BEFORE THE HONORABLE HENRY LEE ADAMS, JR.
                  UNITED STATES DISTRICT JUDGE
11

12                    A P P E A R A N C E S

13   GOVERNMENT COUNSEL:

14           Mark Devereaux, Esquire
             United States Attorney's Office
15           300 North Hogan Street, Suite 700
             Jacksonville, FL  32202
16

17   DEFENSE COUNSEL:

18           Mark Rosenblum, Esquire
             Mark Rosenblum, PA
19           1300 Riverplace Boulevard, Suite 601
             Jacksonville, FL  32207
20

21   OFFICIAL COURT REPORTER:

22           Shelli Kozachenko
             221 North Hogan Street, #185
23           Jacksonville, FL  32202
             Telephone:  (904) 301-6842
24
                       (Proceedings reported by stenography;
25                        transcript produced by computer.)
```

1                 **P R O C E E D I N G S**

2     Tuesday, June 25, 2013                          10:29 a.m.

3                          -  -  -

4          COURT SECURITY OFFICER:  All rise.  United States

5     District Court in and for the Middle District of Florida is

6     now in session, the Honorable Henry Lee Adams, Jr.,

7     presiding.

8               Please be seated.

9          THE COURT:  All right.  Let's call the case.

10         COURTROOM DEPUTY:  Case No. 3:12-cr-198-J-25MCR,

11    United States of America versus Lorraine Brown.

12              Counsel, please state your presence for the record.

13         MR. DEVEREAUX:  Good morning, Your Honor.  Mark

14    Devereaux for the United States.

15         THE COURT:  Good morning.

16         MR. ROSENBLUM:  Good morning, Your Honor.  I'm Mark

17    Rosenblum.  This is Lorraine Brown before the Court.

18         THE COURT:  Good morning.

19         MR. ROSENBLUM:  Good morning, sir.

20         THE COURT:  I think at the last -- at the last

21    hearing I indicated that this hearing was solely for the

22    purposes of sentencing.  I don't think -- I think there are

23    some issues that I have not -- I have not or did not decide

24    at that point in time.

25         MR. DEVEREAUX:  The Court had not made actual

1  rulings.  The Court took the time to consider the evidence

2  presented by the parties, and there were several objections

3  to the PSR by Mr. Rosenblum, so I think that would probably

4  be the best place to start.

5           THE COURT:  Now I understand there is a new issue?

6           MR. DEVEREAUX:  Yes, Your Honor, sort of a side

7  issue where, when Mr. Rosenblum and I were negotiating this

8  last fall, the -- this is really -- at the same time there

9  were two states, Missouri and Michigan, that were indicating

10 that they were interested in charging her.  I believe

11 Missouri had charged Ms. Brown.

12          And in negotiating this, it was our spirit and

13 intent that Ms. Brown -- with the knowledge of both Missouri

14 and Michigan, that Ms. Brown would be serving her time in the

15 federal prison system and that the judges in the -- well, we

16 couldn't say what the judges were going to do, but at least

17 the attorneys general of both the State of Missouri and

18 Michigan had agreed to recommend to the Court that their

19 sentences run concurrent.

20          In fact, Mr. Rosenblum actually negotiated --

21          THE COURT:  Did the attorney generals recommend or

22 the state attorneys of both states recommend that the Court

23 allow her to serve her sentence in federal prison?

24          MR. DEVEREAUX:  They were aware of that, and the

25 discussions that we had had, that was their intent.

1          And so what happened is we had no issue with

2    Missouri because she was actually charged in two

3    jurisdictions in Missouri, and following our previous

4    hearing, Mr. Rosenblum requested a continuance in Missouri

5    out of both jurisdictions.  That was granted.

6          His request in the state of Michigan was denied,

7    which caused, then -- I think Mr. Rosenblum had advised the

8    Court that -- near the next week that he had an appointment,

9    I believe it was Thursday, that next Thursday, in the state

10   of Michigan.

11         When it was denied, both Ms. Brown and

12   Mr. Rosenblum presented themselves.  The Court there imposed

13   an indeterminate sentence of 40 months to 20 years.  She was

14   actually taken into custody.  That then brings us into the

15   murky waters of the Bureau of Prisons' rules and regulations

16   where basically he who has custody first is where the person

17   serves their time.

18         So for the last almost two months, Mr. Rosenblum

19   has diligently attempted to try to get through that

20   murkiness, and I know yesterday -- and I hope the Court has

21   had time, even though it was somewhat late, but I understand

22   Mr. Rosenblum was working to the very end on it.

23         There -- he was working with two areas.  Initially

24   in July Mr. Rosenblum sent a letter to the -- I think it was

25   the deputy attorney general, a Mr. Scott Teter, in the state

1  of Michigan proposing certain alternatives, I believe 1

2  through 4 or 1 through 5, to be able to accomplish our end

3  game or end intent, and that is that Ms. Brown serve her time

4  federally and then get concurrent time for the State.

5         However, they were -- they were not in agreement

6  with a couple of the potential alternatives such as actually

7  dropping the charge or dropping it and then resentencing her

8  somewhat to make it a break so there would -- she wasn't in

9  custody anywhere until, like, today when you sentence her and

10  have her in custody.

11         So what has happened is there is a -- I believe

12  it's the office of interstate agreements on detainers for the

13  State of Michigan, and Mr. Rosenblum had a series of

14  conversations with that representative who then was kind

15  enough to contact Mr. Teter.

16         Mr. Rosenblum has --

17         THE COURT:  Who is Mr. Teter?

18         MR. DEVEREAUX:  Mr. Teter is the -- high in command

19  in Michigan's Attorney General's Office.

20         And the documentation that we have that

21  Mr. Rosenblum attached as Exhibits 1 and -- it's actually two

22  exhibits.  There's correspondence, e-mail, that is

23  corroborating the representations of Mr. Rosenblum that it is

24  in fact Michigan's, I guess, position that if the Court would

25  see fit to amend its writ where -- and Mr. Rosenblum has

1   proposed a writ that instead of how we currently have it --

2   and I just pulled it out of my writ bank, so to speak, where

3   generally it's -- once we finish our hearings, the person

4   goes back, so meaning Ms. Brown would go back to Michigan, is

5   that it just alternatively -- it would be that once our

6   hearing -- the Court sentences Ms. Brown, she then goes and

7   serves her sentence federally.  And once that ends, she would

8   still -- the State of Michigan would have a detainer on her

9   in the federal system, so even after her federal sentence

10  would expire, she would then go into the state system.

11        She has to go back to Michigan because they're

12  literally -- they still have a parole system, and because of

13  that indeterminate sentence that she received, the 20 --

14  excuse me, 40 months to 20 years, they're going to have to

15  have a hearing to determine what exactly the end result will

16  be there, and United States fully supports that.

17        Michigan is -- you know, the bottom line, I think,

18  if you look at it dollars and cents, and sometimes that's the

19  way it comes, I think Michigan is more than happy to let

20  Uncle Sam, the federal government, pay for the room and board

21  of Ms. Brown over the next time -- whatever period of time

22  this Court gives her, rather than Michigan, because as all of

23  our states, I mean, including the federal government, are

24  having financial issues.

25        But truly I think the -- when we look at this, the

1   federal government's interests, I think, are somewhat

2   superior to the individual states', although they saw fit to

3   charge her, at least two of the states.

4         That's correct, Mr. Rosenblum?

5         MR. ROSENBLUM:  Couldn't have said it better, Your

6   Honor.

7         MR. DEVEREAUX:  And Mr. Rosenblum, as I stated,

8   does have a proposed order that if the Court were to sign

9   that, it would just amend what we currently have that I had

10   the magistrate judge sign after we learned where -- one, we

11   had to wait to learn exactly where and when Ms. Brown was

12   going to be at the end result in Michigan so we could have

13   her picked up by the marshals and transported here, via

14   Oklahoma, so . . .

15         THE COURT:  Mr. Rosenblum?

16         MR. ROSENBLUM:  Your Honor, as I said,

17   Mr. Devereaux stated our position exactly.

18         THE COURT:  Now, specifically, what language are

19   you asking that I strike from the habeas or that I put into

20   the habeas?

21         MR. ROSENBLUM:  Your Honor, I had provided a copy

22   to Ms. Anderson, and I don't know if she has had a chance to

23   give the copy that I provided to the Court, but it is titled

24   Amended Writ of Habeas Corpus Ad Prosequendum.

25         Do you by any chance have that in front of you?

```
 1            THE COURT:  I'm sure it's in this stuff I got here.

 2            MR. ROSENBLUM:  And I do have another copy here

 3   which I can hand up.

 4            Can I approach?

 5            THE COURT:  Yes, you may.

 6            MR. ROSENBLUM:  And it's actually just the second

 7   paragraph that has changed.  The rest of the writ is exactly

 8   like the original writ that the Court signed.

 9            What the second paragraph changes is that -- and

10   it's right around the middle of the paragraph.  It says,

11   "Following sentencing, said Lorraine Brown shall serve the

12   sentence imposed by this Court in federal custody at the

13   facility designated by the Federal Bureau of Prisons.

14            "Following expiration of said Lorraine Brown's

15   federal sentence, she shall be returned to the custody of the

16   Michigan Department of Corrections for completion of any time

17   that may remain on her Kent County, Michigan, sentence," and

18   then I give the case number of that so that there's no

19   misunderstanding of what the Michigan case is.

20            THE COURT:  Well, my hesitation about altering this

21   habeas corpus is opening that door to make that decision as

22   to -- or to affect that decision in a way that I'm not

23   probably authorized to do, to affect where or what

24   jurisdiction a defendant serves her sentence.  I'm not sure I

25   want to do that.  I'm not sure it's going to work anyway.  Be
```

1   interesting to see if it does work, but I'm not sure I want

2   to do that.

3          Why should I treat this sentence -- I was about to

4   ask why should I treat this sentence so different, but then

5   again, I wouldn't be treating it different because I've never

6   had this situation before.

7          Okay.  Let me give it some thought.

8          My concern is not having something from the State

9   of Michigan or someone in there -- in authority in the State

10  of Michigan to say that they have no objections to this,

11  because what I'm doing is changing a writ that the State of

12  Michigan followed to release her into our custody after she's

13  been released.  That presents somewhat of a problem for me.

14  I'm changing the conditions of that release now, and I'm

15  changing them, quite frankly, in a significant manner.

16          MR. DEVEREAUX:  Well, in reality she -- it would

17  almost be -- let's say we had the situation where -- I

18  currently have a case and we've had custody of the gentleman

19  for almost a year from the State, and it's going on because

20  we're having sanity issues, etc.  And so we're having custody

21  of this person under a writ until that proceeding is

22  completed, which honestly could be another six or eight

23  months, truly, and so it could be an extensive period of

24  time.

25          During that entire time, the defendant is still

1    receiving credit -- like Ms. Brown is still receiving credit

2    for each day that she's here under -- and, like, at our

3    invitation somewhat.  She's receiving credit for her sentence

4    in the State of Michigan.

5         My only suggestion, because I certainly understand

6    and appreciate the Court's concern, is if the Court were

7    possibly to modify the recommended wording by Mr. Rosenblum

8    to say that the Court would reconsider this and provide the

9    State of Michigan 30 days to object to this action should the

10   State of Michigan find it appropriate to do so and so that it

11   doesn't somewhat come into effect.

12        I don't know if that's something possible, but it

13   would at least give the State of Michigan -- and the Court

14   would be giving the State of Michigan some respect in its --

15   by giving it an opportunity to somewhat intervene, so to

16   speak, on it for a certain period of time.  And Mr. Rosenblum

17   and I can provide this, you know, immediately to the State of

18   Michigan so they're aware of it, and they can send a notice

19   that we have no objection or that they did have an objection.

20        THE COURT:  One other -- one other question that I

21   do have about this, the plea agreement does seem to suggest

22   that there was agreement between the government and the

23   defendant that she would, in fact, serve her sentence in

24   federal custody, federal prison, as I read it.  And if I deny

25   your motion to amend -- to amend the writ, then what --

1    what's her options since she didn't get everything she

2    bargained for?

3            MR. DEVEREAUX:  I think the Court's reading it a

4    little stronger than I believe it's actually worded.  It's on

5    page 6, paragraph 8, regarding concurrent sentencing, and it

6    states, "The United States agrees not to oppose any argument

7    by the defendant with the sentencing court that any sentence

8    imposed by the Court run concurrent with any sentences

9    imposed by any state courts for state criminal charges

10   generally based upon the conduct underlying the instant plea.

11           "Should there be a sentence imposed by any other

12   state court, it is the parties' intention that any sentence

13   ordered by the Court in this case be served prior to any

14   remaining time on any such state terms."

15           This agreement in no way limits the Court's

16   authority to render whatever lawful sentence it deems

17   appropriate.

18           THE COURT:  Okay.  You're saying that it's no more

19   than a statement of the --

20           MR. DEVEREAUX:  Intent.

21           THE COURT:  -- of you two's intention.

22           MR. DEVEREAUX:  Yes, sir.

23           THE COURT:  Is that my understanding?

24           And she has no remedy if I refuse to go along with

25   this.  She can't move to set aside her plea.

1          MR. ROSENBLUM:  I would agree with that, Your

2   Honor.  I think that Mr. Devereaux is right that this was

3   a -- as oftentimes in plea agreements, there's language that

4   indicates the government's going to recommend something or

5   won't oppose something.  That's all that that language

6   amounts to.

7          Your Honor, could I just speak to something that

8   the Court said a little while ago --

9          THE COURT:  Yes, uh-huh.

10          MR. ROSENBLUM:  -- and that was that the Court

11   expressed concern about the official position of the State of

12   Michigan, and that was what prompted Mr. Devereaux to state

13   that the writ could -- or the amended writ could also state

14   that the State of Michigan would have 30 days to appeal and

15   that Mr. Devereaux and I would obviously take steps to inform

16   them.

17          But I just want to remind the Court, and I think

18   you already know this, Your Honor, the State of Michigan has

19   already been informed, and although it's not an official

20   letter on the governor's letterhead, we do have this e-mail

21   that was attached as Exhibit B to the -- to the motion that I

22   filed yesterday.

23          And if I could just read the language in the

24   motion.  And before I do that, let me just explain to the

25   Court who Don Matson is, because the author of the e-mail is

1   a man named Don Matson, and he is listed as supervisor/DCA,

2   Interstate Compact Unit, IAD -- and as you know that's

3   interstate agreement on detainers -- administrator, so he is

4   someone who is in authority at the Michigan Department of

5   Corrections.

6           And his e-mail says:  "Hi, Mark.  I spoke to

7   Scott" -- and Scott is the Scott that Mr. Devereaux just

8   referred to.  That's Scott Teter, the prosecutor in the

9   Michigan case who is high up in the Attorney General's Office

10  for the State of Michigan.  "I spoke to Scott this morning,

11  and we agree the best option at this point would be for you

12  to file a motion to amend the language in the writ," which is

13  exactly what I did yesterday.

14          "If the language was changed to indicate the feds

15  shall turn over the prisoner to the Michigan Department of

16  Corrections upon completing her sentence with the BOP instead

17  of after the federal hearing, the MDOC would ensure our

18  detainer is in place" -- which is exactly what Mr. Devereaux

19  had just said -- "with the feds, and we would take custody of

20  the defendant upon her availability to us."

21          So what Mr. Matson is doing is expressing what I

22  would submit is an official position where we know that we

23  have the prosecutor with the State of Michigan on board, and

24  we know that we have the Michigan Department of Corrections

25  on board because the State of Michigan is not contesting

1  this.  They would actually be delighted if this Court would

2  amend the writ so that Ms. Brown would serve her sentence in

3  federal custody, both her federal and Michigan sentence.

4     THE COURT:  It's just the judge who started all

5  this, he won't be happy about this.

6     MR. ROSENBLUM:  Your Honor, I don't think that's

7  the case.  I hear what you're saying, but if you look at the

8  motion to amend the writ, I attached Exhibit A, and

9  Mr. Devereaux was kind enough to hand it to me.

10     And this was the judge's language at the time that

11  he sentenced her, and it's the first full paragraph on the

12  page that I submitted as Defendant's Exhibit A.  And this is

13  Judge Trusock, a circuit court judge in Grand Rapids,

14  Michigan:  "It is the sentence of this Court, ma'am, that you

15  be committed to the Michigan Department of Corrections to

16  serve a minimum of 40 months to a maximum of 20 years.  I

17  will give you credit for one day that you have previously

18  served.  Pursuant to the agreement, this is concurrent with

19  any federal charges.  They can figure out where you serve

20  your time.  I'm not going to have any input on that

21  whatsoever."

22     And so just to put a little context to this, when

23  we were at the sentencing hearing, we were pleading with the

24  judge in Grand Rapids to not take Ms. Brown into custody so

25  that we wouldn't face this issue, and because it is his

1  custom, I guess, to take people into custody, he did that.

2         But he stated on the record, and I don't think

3  those -- his language can be ambiguous, that he doesn't care

4  where she serves her time.  It's fine with him -- he didn't

5  say this part.  He said, "I don't care where you serve your

6  time," but I'm making a further sort of like logical

7  statement from that which is that it would be fine with him

8  if Ms. Brown would serve her time in federal custody.

9         THE COURT:  And what's the Bureau of Prisons'

10  position?  Anybody talk to them?  Or do they have a position

11  in this?

12         MR. DEVEREAUX:  Federally?  Federally, their rules

13  state that if she's in custody that she would have to serve

14  the State sentence, unless, I guess, the writ would be

15  changed, because it's whoever --

16         THE COURT:  But she's still going to be in

17  custody -- even if the writ is changed, she's still in

18  federal custody -- she's still in State custody.

19         MR. DEVEREAUX:  She's in State custody, just as she

20  is right now.

21         THE COURT:  Yeah.

22         MR. DEVEREAUX:  Yes, sir, but -- and it would be

23  running concurrent.

24         And I guess one other fly in the ointment, so to

25  speak, is she cannot be given credit -- the Court can't give

her credit for the time that she's served from Michigan, when she was taken into custody in Michigan up till today, because you can only give it -- you can't give it in arrears.  You cannot give credit in arrears from the State.

So once -- I think Mr. Rosenblum even suggested that, that you could reduce whatever sentence by X number of days if you wanted to do that.  But in your order I don't think it would be lawful for you to give credit for time that's already been served in Michigan's custody because you can only do it if she was under our arrest, and it would be, you know, like if she was arrested in April and had been detained without bond.

THE COURT:  So she's going to lose a couple of months regardless of how you cut it.

MR. DEVEREAUX:  At least on yours.  At least on your sentence, yes, sir.

MR. ROSENBLUM:  It's May 2nd to June 25th.  The day that she was sentenced in Michigan was May 2nd.

THE COURT:  All right.  Let's go back to the sentencing aspect of this.

I do have -- I have given some thought to the loss issue objection that was raised.  I don't necessarily agree with the defendant's objection as to the loss.  However, I don't necessarily agree with probation's determination that the loss is in excess of $20 million, given the -- given the

1    evidence that's been presented in this case and the fact that

2    the -- currently there was an assessment of -- there was a

3    calculation of $5 to $15 for each one of these documents.

4         I'm going to find that the loss in this case -- I'm

5    going to put it at $5 million.  I don't think that changes

6    the calculations at all, the guideline calculations at all.

7    I think it's still at 60 months, I believe.

8         If I took the loss to 5 million as opposed to the

9    20 million, the net effect on the guideline calculation is a

10   reduction, I believe, in two levels.  And that two levels --

11   Criminal History Category I at a level 29 goes from 87 to 108

12   months, which is beyond the maximum penalty that she's

13   exposed to, which puts us back at the 60 -- at the 60 points.

14        All right.  Is there anything else I need to do

15   before I impose the sentence in this case?

16        MR. ROSENBLUM:  No, Your Honor, not from the

17   defense.

18        THE COURT:  Why don't you and Ms. Brown come up to

19   the podium.

20        MR. ROSENBLUM:  Oh, actually, there is one other

21   thing that you should do, Your Honor, and that would be you

22   should make a finding on the number of victims as well.  That

23   was the other objection to the presentence report.

24        THE COURT:  I'm not sure I understand that

25   objection.

1            MR. ROSENBLUM:  There were two objections to the

2      report.  One of them was to the amount of loss, and the other

3      one was to the number of victims, and maybe your finding in

4      the amount of loss subsumes the fact that you have already

5      found --

6            THE COURT:  Well, I think the way I calculated the

7      loss, there's probably only two victims in this case.  That's

8      the person who paid -- the persons who paid this money to

9      her, if I'm understanding your objections, the person she

10     worked for who had to pay it back, and that -- that's the way

11     I calculated the victims in this case, and that's the way I

12     determined -- calculated this loss.

13           MR. DEVEREAUX:  The victims, Your Honor, were

14     actually -- Ms. Brown was working for LPS.

15           THE COURT:  She started off by her -- for herself.

16     The business was sold --

17           MR. DEVEREAUX:  Right.

18           THE COURT:  -- so the victim has to be the person

19     that she was working for.

20           MR. DEVEREAUX:  No.  The victim was paying LPS

21     because the company --

22           THE COURT:  It's LPS that paid -- that paid the

23     $20 million, I believe; is that correct?

24           MR. DEVEREAUX:  Correct.  They paid that back to

25     various victims.

1          THE COURT:  Well, you're right.  The victims would

2    be the persons who actually hired the company and paid the 5

3    or the $15 per document.

4          MR. DEVEREAUX:  Yes, Your Honor.  And --

5          THE COURT:  An additional victim in the case would

6    be the company that had to reimburse that.

7          MR. DEVEREAUX:  Yes, sir.

8          THE COURT:  I can't calculate the number.  If I

9    could, I could come up with a better way of doing the loss.

10   I don't know what the number of victims is.

11         MR. DEVEREAUX:  We had it well in excess of 30.

12   There were over 30 companies during the time frame.  In fact,

13   I provided the Court with a listing that Mr. Rosenblum was

14   kind enough to provide in the cooperation that Ms. Brown

15   agreed to.  We were wanting to ensure that we had the correct

16   number, and I believe I provided that document to the Court

17   during the hearing, and it was --

18         THE COURT:  Yeah.  All right.  I'm going to find it

19   was more than ten victims.

20         MR. DEVEREAUX:  Yes, sir.

21         THE COURT:  Anything else?

22         MR. ROSENBLUM:  No, Your Honor.  I just wanted the

23   record to be complete so that you made all the findings on

24   the objections.

25         The only thing that we didn't do --

1          THE COURT:  Ms. Brown, is there anything you want

2    to say before I impose the sentence?  I don't think I gave

3    you that opportunity at the last hearing, and now I'm going

4    to do that.

5          THE DEFENDANT:  Yes, Your Honor.  Thank you.

6          You know, short and sweet, sir, you know, I made a

7    horrible mistake, and I harmed people, and I am so sorry.

8    There's just no words that can express how sorry I am for the

9    victims of my crime, sir.

10          Thank you.

11          THE COURT:  All right.  Having asked the defendant

12    why judgment should not now be pronounced, no cause being

13    shown to preclude pronouncement of sentence, it's the

14    judgment of the Court that the defendant, Lorraine Brown, is

15    hereby committed to the custody of the Bureau of Prisons to

16    be imprisoned for a term of 60 months.

17          Upon release from imprisonment, she's to serve a

18    two-year term of supervised release.  She is to comply with

19    the standard conditions adopted by the court in the Middle

20    District of Florida.  This sentence is to run concurrent to

21    the sentences that she's currently serving in connection with

22    the State of Michigan -- what's the other state?

23          MR. DEVEREAUX:  Missouri has not imposed sentence

24    yet so you can't --

25          THE COURT:  All right.  So it's only Michigan.

1          The Bureau of Prisons -- additional conditions of

2    her supervised release, she's prohibited from incurring new

3    credit charges, opening additional lines of credit, or

4    obligating herself for any major purchases without approval

5    of the probation office.  She's to give the probation officer

6    access to any requested financial information.

7          She is to cooperate in the collection of DNA as

8    directed by the probation office.  The mandatory drug testing

9    requirements of the Violent Crime Control Act are waived and

10   suspended.  The defendant poses a low risk of substance

11   abuse.

12         She is to pay a fine in the amount of $15,000.

13   $5,000 shall be paid immediately and the balance during the

14   term of supervision at a rate of $500 a month.  It's ordered

15   that she pay to the United States a special assessment of

16   $100, which is due immediately.

17         I've considered the advisory guidelines, as well as

18   the 3553 factors and find that the sentence imposed is

19   sufficient but not greater than necessary to comply with the

20   statutory purposes of sentencing.

21         I'm going to accept the plea agreement.  I'm also

22   going to grant your motion to amend the writ of habeas

23   corpus, the order on the writ of habeas corpus.  Now, having

24   done that, I'm not convinced that what you propose will allow

25   her sentence to be served in federal court.  And I'm not sure

1   that the Bureau of Prisons is not going to object to what it

2   sees -- what it may see as this Court trying to interfere in

3   something that doesn't belong -- that doesn't concern it,

4   shouldn't concern it.

5        Ms. Brown, in your plea agreement, specifically

6   paragraph B.5, you waived and gave up your right to appeal

7   this sentence unless one of four things happened, the first

8   being a sentence in excess of the guideline range.  That

9   didn't occur; a sentence above the statutory maximum, and I

10   think the maximum in this case is 60 months; a sentence in

11   violation of the law separate and apart from the guidelines;

12   or if the government exercises its right to appeal the

13   sentence, which it does have.

14        To the extent you have a right to appeal, you have

15   to do it within 14 days.  Failure to appeal within that

16   14-day period means you waive or give up your right to

17   appeal.  If you wanted to appeal and couldn't afford counsel,

18   one would be appointed to represent you.

19        Having pronounced sentence, does counsel for the

20   defendant or the government have any objections to the

21   sentence or the manner in which the Court pronounced sentence

22   other than what's been stated?

23        MR. DEVEREAUX:  None by the United States, Your

24   Honor.

25        MR. ROSENBLUM:  No, Your Honor.

1          Your Honor, do you want me to --

2          THE COURT:  I will state for the record that in the

3   event that the Bureau of Prisons do not keep custody, I am

4   going to indicate that they may select a facility in either

5   Michigan or Missouri to serve this sentence if that's what

6   they determine to do.

7          Go ahead, Counsel.

8          MR. ROSENBLUM:  I was just going to ask whether the

9   Court needed me to supply a proposed amended writ, or do you

10  already have one?  I think I gave one to --

11         THE COURT:  Yeah, I have one, but it might help if

12  you -- I think it's attached to something, is it not?  I was

13  reading it a minute ago.  It's attached to something.

14         You might do well to provide me another copy of it.

15         MR. ROSENBLUM:  I will.

16         THE COURT:  Anything else?

17         She's remanded to the custody of the marshals.

18  Good luck to you, Ms. Brown.

19         THE DEFENDANT:  Thank you, sir.

20         THE COURT:  I think there were some issues -- there

21  was an issue raised about restitution.  I don't know if I

22  disposed of that at the previous hearing, but I didn't -- but

23  I did not find that restitution had been sufficiently

24  established in this case.

25         MR. DEVEREAUX:  Yes, sir.  And the United States is

1  not going after any forfeiture.

2          THE COURT:  All right.

3          MR. DEVEREAUX:  Yes, sir.

4          THE COURT:  Thank you.

5          MR. DEVEREAUX:  Thank you, Your Honor.

6          (The proceedings were concluded at 11:05 a.m.

7                          -  -  -

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                          CERTIFICATE

 2

 3   UNITED STATES DISTRICT COURT )

 4   MIDDLE DISTRICT OF FLORIDA   )

 5

 6

 7          I hereby certify that the foregoing transcript is a

 8   true and correct computer-aided transcription of my stenotype

 9   notes taken at the time and place indicated therein.

10

11          DATED this 23rd day of October, 2013.

12

13

14                              s/Shelli Kozachenko
                                Shelli Kozachenko, RPR, CRR
15

16

17

18

19

20

21

22

23

24

25
```